

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 23, 2024

**BY ECF**
The Honorable Jennifer H. Rearden
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Hassan Wright*, 24 Cr. 179 (JHR)

Dear Judge Rearden:

    The Government respectfully submits this letter in advance of the sentencing of defendant Hassan Wright, and in response to his sentencing submission, dated October 16, 2024 (ECF No. 22, "Def. Mot."). Sentencing is scheduled for October 30, 2024, at 11:30 a.m. The Government respectfully requests that the Court impose a sentence of 15 months' imprisonment, to be followed by two years' supervised release. Such a sentence would be sufficient but not greater than necessary to serve the purposes of sentencing and would appropriately account for the defendant's criminal conduct.

    I.    **Background and Offense Conduct**

    On or about November 15, 2023, officers with the New York City Police Department ("NYPD") observed the defendant on two separate Instagram Live recordings approximately one hour apart holding a firearm. (PSR ¶ 9.) The NYPD officers were conducting surveillance of the defendant's public Instagram account with the username "the_wizard_of_haz." (*Id.*)

    During the first Instagram Live recording, the NYPD officers observed the defendant in possession of a firearm while riding around the vicinity of the Webster Houses in the Bronx. (PSR ¶ 10.) The NYPD officers recognized the location where the defendant was, but when they arrived at that location, the defendant had traveled to another part of the Bronx. (*Id.*)

    Approximately one hour later, the defendant began filming a second Instagram Live recording. (PSR ¶ 11.) The second Instagram Live recording showed the defendant holding and waiving a firearm while standing in the vicinity of 1534 Selwyn Avenue in the Bronx. (*Id.*) The NYPD officers again recognized the defendant's location and traveled there. (*Id.*) Upon arriving at the location where the defendant had been filming, the NYPD officers observed the defendant, approached the defendant, and conducted a search of his person. (*Id.*) During the search, the NYPD officers found a loaded Taurus model PT111 G2/Millenium G2 9mm pistol (the "Firearm") from within the defendant's right jacket pocket. (*Id.*) The Firearm was loaded with ten rounds of

ammunition. (PSR ¶¶ 11, 14.) The NYPD officers arrested the defendant and brought him back to the police station. Back at the police station, the defendant waived his Miranda rights and stated, in sum and substance, that he possessed the Firearm for protection because he had been shot before and feared for his safety. (PSR ¶ 12.)

As detailed in the PSR and the *Pimentel* letter, this is not the first time that he has used violence and been involved with guns. In the defendant's prior felony conviction in Bronx County Supreme Court, the defendant admitted during his plea hearing that he discharged a firearm into a large crowd of bystanders. (PSR ¶ 30.)

### II. Procedural History

January 30, 2024, Wright was charged by complaint with one count of possession of a firearm after a felony conviction, in violation of 18 U.S.C. §§ 922(g), arising from his possession of the Firearm on November 15, 2023. The defendant was arrested on February 28, 2024, and was presented before the Honorable Gabriel W. Gorenstein, United States Magistrate Judge in the Southern District of New York. Judge Gorenstein granted the defendant bail but ordered the defendant detained until his bail conditions were met. The defendant has been in custody since that date. On or about March 26, 2024, a grand jury sitting in this district returned an indictment charging the defendant with one count of possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g), arising from his possession of the Firearm on November 15, 2023.

### III. The Defendant's Plea and Applicable Guidelines Range

On June 17, 2024, the defendant pleaded guilty—without the benefit of a plea agreement—to the single count of the Indictment before this Court. PSR ¶¶ 4-5.

In a *Pimentel* letter, the Government calculated a base offense level of 14, because the defendant was a prohibited person at the time the defendant committed the instant offense. After a two-level decrease for acceptance of responsibility, the Government calculated the defendant's total offense level as 12. PSR ¶ 5. The Government calculated a Criminal History Category of II, resulting in an applicable Guidelines range of 12 to 18 months' imprisonment (the "Guidelines Range"), and a fine range of $5,5000 to $55,000. PSR ¶ 5.[1] The Probation Department agrees with the Government's calculation.

### IV. Applicable Law

The United States Sentencing Guidelines still provide strong guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), *abrogated on other grounds by United States v. Fagans*, 406 F.3d 138, 142 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that district courts must "consult" the Guidelines and "take them into account" when sentencing.

---

[1] The Government notes that the PSR at Paragraph 5 states the correct applicable fine range, but mistakenly states that the offense level is "25" rather than "12."

2

543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range"—that "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the defendant's need for rehabilitation; the kinds of sentences available; the need to avoid unwarranted disparities in the sentences imposed on similarly situated defendants, and the sentencing range under the Guidelines.

V.      Analysis

A sentence of 15 months' imprisonment is sufficient, but not greater than necessary, to achieve the purposes of sentencing in this case. Such a sentence reflects the seriousness of the defendant's conduct and provides just punishment for at least three reasons.

*First*, Wright's crime—possession of a firearm after a felony conviction—is by its nature a serious offense. *See United States v. Sapp*, No. 02 Cr. 1065 (NGG), 2007 WL 1232073, at *3 (E.D.N.Y. Apr. 26, 2007) ("Defendant's conduct was extremely serious. When a felon possesses a gun, the public is put at significant risk."); *cf. United States v. Brown*, 690 F. App'x 774, 775 (2d Cir. 2017) (explaining that "the crime of conviction, possession of a loaded firearm by a defendant convicted of numerous violent felonies, was particularly serious"). In addition, the defendant stated that the reason he possessed the Firearm was to protect himself (PSR ¶ 12), which indicates that he was willing to use the Firearm if he deemed it necessary. The fact that the Firearm was loaded heightens the increased risk of danger and the defendant's willingness to use it.

*Second*, the defendant's criminal history warrants a serious sentence.[2] This is the defendant's second criminal conviction involving a firearm. The defendant's 2017 conviction in Bronx County Supreme Court arose from an incident in which the defendant discharged a firearm into a crowd of bystanders. (PSR ¶ 30.) A substantial sentence is necessary to deter the defendant from engaging in crimes involving firearms. In addition, such a sentence serves to protect the public from further crimes of the defendant.

*Third*, the defendant's prior convictions for gun-related offenses supports imposing a sentence that is above the bottom of the Guidelines range. The Government acknowledges the myriad ways that the defendant says he has had a challenging life. But nothing in the defendant's personal background excuses the fact that although he was already sentenced to 5 years' imprisonment for a firearms offense, the defendant nonetheless continued to possess firearms.

---

[2] Since being incarcerated for the instant offense, the defendant has been sanctioned twice by the Bureau of Prisons. On or about July 15, 2024, the defendant possessed a dangerous weapon and fought with another inmate. On or about August 21, 2024, the defendant fought with another inmate. When questioned about the August incident, the defendant stated, in sum and substance, "I was defending myself."

Courts routinely impose sentences that are incrementally higher than prior sentences in order to provide specific deterrence to criminals. The idea of incremental punishment comports with common sense. And, in fact, the Second Circuit routinely affirms sentences based, in part, on that principle. *See, e.g.*, *United States v. Mishoe*, 241 F.3d 214, 220 (2d Cir. 2001) ("Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve."); *United States v. Guzman*, No. 21-441-cr, 2022 WL 1409583, at *2-3 (2d Cir. May 3, 2022) (affirming above-Guidelines sentence imposed, in part, to provide incremental punishment and, thus, specific deterrence, and collecting cases in which Second Circuit has affirmed district courts' reliance on similar logic in imposing sentences). Although the Government is not seeking an incrementally higher sentence here, the defendant's history does not justify a bottom-of-the-Guidelines sentence.

For these reasons a sentence of 15 months' imprisonment for Wright's violation of 18 U.S.C. § 922(g)(1) is consistent with the 3353(a) factors and well-justified in this case.

[Remainder of page intentionally blank]

## VI. Conclusion

For the foregoing reasons, the Government respectfully submits that the Court should impose a sentence of 15 months' imprisonment.[3]

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _____
William K. Stone
Assistant United States Attorney
(212) 637-2521

cc:  Sylvie Levine, Esq. (counsel for defendant) by ECF
     Probation (by email)

---

[3] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g., United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same). The Government respectfully submits that both of the special conditions proposed by Probation in the PSR are appropriate here, largely for the reasons given by Probation. In particular, the search condition (special condition #2) reasonably relates to the important interests of protecting the public and deterring recidivism, given Wright's history and characteristics. Wright has a history of possessing firearms, including displaying firearms on social media. (*See* offense conduct in this case and PSR ¶¶ 9-12.) In today's world, evidence of such offenses is commonly found on electronic devices, such as cellphones, and in the cloud. For example, the location data on a cellphone might help locate a defendant at the scene of a shooting; the images and videos stored on an electronic device or in the cloud might show the relevant narcotics, ammunition, or gun; and the chats backed up on an iCloud account, for example, might reveal where a defendant obtained particular contraband. In this case, where the defendant has possessed a gun, the intrusion into the defendant's liberty imposed by this portion of the search special condition is justified by the need to quickly and efficiently identify a threat of recidivism and to protect the public if there is reasonable suspicion to believe that the defendant has violated a term of his supervised release or committed further criminal acts.